# THE
# TEXAS LAW REPORTER

## AUSTIN, TEXAS, JANUARY, 1884.

### EUSTACE JACKSON vs. THE STATE.

COURT OF APPEALS, TYLER TERM, 1883.

*Charge of the court.* A defendant in a felony trial is entitled to a distinct and affirmative presentation of the issues which arise upon his evidence, in order to prevent the jury from ignoring his defenses, and to conduct them to proper verdict if they find his evidence to be true. However improbable his evidence may appear, it is his right to have the jury determine its truth or falsity in the first instance, without being forestalled by the court. Self-defense being an issue clearly presented by the evidence in this case, the charge of the court should have embraced the law of the subject.

*Same—Practice.* In a murder trial, wherein the evidence raised the issue of self-defense, the trial judge failed to charge the jury with respect to that issue. The defendant neither excepted to the charge as given when given, nor requested special charges appropriate to the question, but assigned as error in motion for new trial, the omission in the charge. *Held,* that under such circumstances, this court must determine first, did the court err in omitting to instruct the jury upon the principles of law governing self-defense ? Second, if such omission was error, was it calculated to injure the rights of the defendant ? See a state of case wherein it is hold that such omission was error, and such error was _calculated to injure the rights of the defendant.

Appeal from Refugio County.

*Woodruff* & *Merriweather* for the appellant.

*J. H. Burts* Assistant Attorney General for the State.

Opinion by Willson, J.

Substantially, the facts of this case as presented by the record are as follows :

1. Henry Curry, the deceased, was killed on the 20th day of July, 1883, in Refugio county. His death was produced by two

wounds in the back inflicted by shots from a pistol. He was also stabbed with a knife in several places.

2. Eustace Jackson, the defendant, inflicted the wounds which produced the death of Curry, and also the wounds with the knife.

3. Jackson and Curry were alone when the homicide was committed. No other person witnessed the encounter which resulted in the death of Curry.

4. Curry bore ill will towards the defendant Jackson. Three or four weeks before he was killed, he tried to get Jackson to fight him, and also about that time said that he was going to kill Jackson— that he had never lived in a State where he had not killed his man. This threat was communicated to Jackson prior to the homicide.

5. At the time of the homicide both the defendant and the deceased were in the employ of one West, who testifies in the case, and on the day of the homicide had been engaged during the day in cutting hay, some miles distant from where they resided.

6. On the evening of that day deceased requested defendant to get some provisions and take home to his, deceased's family, saying that he, deceased, would remain on the hay grounds that night, and take care of the teams. Defendant got the provisions and carried and left them at deceased's house as requested, and then went over to the witness West's house, which was not far away. It was the understanding that deceased was to remain at the hay grounds that night and take care of the teams, and that defendant after taking the provisions to deceased's house, and repairing a break in his, defendant's, fence, would return to the hay grounds that night.

7. While defendant was at West's house, deceased arrived at home from the hay grounds, and got his pistol, powder, caps and shot, and started off again, being on horseback. Before leaving home he said that either the defendant or himself would have to die that night.

8. Deceased, after leaving home, went to defendant's house and called for defendant, but defendant not being there, he galloped on by West's house in the direction of the town of Refugio, and also in the direction of the hay grounds. As he passed West's house, the defendant called to him to stop, and the witness West, who was present with the defendant, testifies that the deceased did not stop, but replied to the defendant, cursing him, and telling him that he would blow his brains out before morning. Upon this point, how-

ever, there is a conflict of testimony. Woods, a witness for the state, testifies that Curry made no reply when the defendant called to him to stop, and that the defendant then cursed Curry, and told him he would kill him before morning.

9. Shortly, and perhaps immediately, after deceased passed West's house, defendant mounted his horse, and rode off in the direction that deceased had gone. There is some conflict in the testimony of the witnesses West and Woods as to the time and manner of defendant's departure. West states that defendant left saying he would return to the hay grounds. In returning to the hay grounds he would have to travel the same road that deceased was traveling when he passed West's house.

10. Some fifteen minutes after defendant left West's house shots were heard in the direction of the place where the homicide occurred, which was about one mile and a half from West's house. West testifies that he heard three or four shots. Woods testifies that he heard six or seven shots. Both these witnesses state that the first shot did not sound as loud as the others, and that the others sounded alike· Deceased's pistol was a single barrel, muzzle loading dragoon holster pistol, while the defendant's pistol is not described in the record.

11. Soon after the shots were heard—West says in about fifteen minutes, Woods says in about half an hour—defendant retured to West's, and said he had killed Curry, that Curry had run on to him and told him to stop, and then fired the first shot at him with a pistol; that he then shot Curry and stabbed him with a knife; that he had knocked the knife out of Curry's hands with his pistol, when they both went down off their horses for the knife; that he got it first and stabbed him and wiped the blood from the knife and threw it down by the body.

12. About twenty steps from the body deceased's pistol was found, and it was unloaded, and presented the appearance of having been recently discharged. A butcher knife, belonging to the deceased, was also found near the dead body.

13. In describing the indications on the ground near the dead body, a witness iays . "Discovered some tracks made by two horses going in a run in the same direction and towards the town of Refugio. The horses were running in a zigzag or unsteady manner which may have been caused by the riders having hold of, or scufflling with each other. Near where the body lay the ground showed where the

deceased had fallen off his horse and slid along the ground a little piece; the imprint was there, and the deceased had dirt on his clothes, in his hair and on his face."

Upon this state of facts the court charged the jury upon the law of murder of the the first and second degrees, and of manslaughter, but gave no charge as to justifiable homicide in self-defense. No exceptions were made to the charge of the court, and no charges were requested by the defendant, but in his motion for a new trial the defendant complains of the charge of the court in several respects, and particularly because it does not contain all of the law applicable to the evidence, in that it omits to instruct the jury upon the law of justifiable homicide in self-defense.

We are therefore to determine : First, did the court err in omitting to instruct the jury upon the principles of law governing self-defense ? Second, if such omission was error was it calculated to injure the rights of the defendant ?

We think both of these questions must be answered in the affirmative. While the evidence upon the question of self-defense is conflicting, yet in our opinion it fairly presents that issue, and this being the case the learned judge should have submitted the issue to the jury under proper instruction as to the law of self-defense. As has heretofore been said by this court : The defendant is entitled to a distinct and affirmative presentation of the issues arising upon the evidence, in order that the the jury may not be induced to ignore his defenses upon the supposition that the court did not deem them of sufficient importance to justify consideration, and for a further reason that without such presentation, the jury are in no condition to make an intelligent selection of law which should govern them in case they should find that the defendant's evidence was true. It may often happen that the testimony in defense has been fabricated, and that so inartistically as to bear upon its face an air of improbability or actual untruth; but even then the court is not relieved from the duty of considering it in framing its charge, as it is the right of the defendant to have its truth or falsity determined by the jury and not by the court in the first instance." Reynolds vs. State, 8 Ct. App. 412.

If we are correct in our conclusion that the evidence demanded a proper charge upon the law of self-defense, then we are clear in our opinion that the omission to give such a charge was an error calcu-

lated to injure the rights of defendant. Self-defense to him was the vital issue in the case. It was his sole defense, and if he could not avail himself of it, he was left without any justification, excuse, or even mitigation for the homicide. In determining this question it is not for us to pass upon the evidence, and say whether or not it establishes self-defense, and whether or not, in our opinion the rights of the defendant were in fact injured by the failure of the court to charge upon the law of self-defense. We are only called upon to say, whether or not the omission to give such charge was calculated to injure the rights of the defendant, and we think it was. Maddox vs. State, 12 Ct. App. 429.

Other objections are urged against the charge of the court, but we deem them untenable. If the charge had embraced the law of self-defense applicable to that issue as raised by the evidence, we think it would have been unobjectionable, but because it was objectionable in this respect, the judgment is reversed and the cause remanded.